## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PERFORMANCE FOOD GROUP, INC.,<br><br>                                    Plaintiff,<br><br>        v.<br><br>PERFORMANCE FOOD GROUP INCORPORATED JOLIET d/b/a PERFORMANCE FOOD GROUPS,<br><br>                                    Defendant. | Case No. _____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Performance Food Group, Inc. ("PFG" or "Plaintiff"), by and through its undersigned counsel, hereby alleges as follows for its Complaint against Defendant Performance Food Group Incorporated Joliet doing business as Performance Food Groups ("Defendant"):

### Introduction

1.       This is an action for trademark infringement, counterfeiting, unfair competition and false designation of origin, and cybersquatting under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*; trademark infringement and unfair competition under Illinois common law; and deceptive trade practices under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1, *et seq.*

2.       Founded in 1885, PFG is a well-known, well-respected nationwide distributor of food, beverage, and foodservice products.

3.       At least as early as 1987, PFG adopted the tradename and brand PERFORMANCE FOOD GROUP, and shortly thereafter began offering its high-quality distribution services, under several related word and design marks, including but not limited to PFG, PERFORMANCE FOOD

GROUP, and PERFORMANCE FOODSERVICE, as well as the following design mark, which is the flagship logo of PFG:



(the design mark, together with all of its color and design variations, will be referred to as the "PFG Design Mark," and the PFG Design Mark will be referred to collectively with all of PFG's PERFORMANCE FOOD- and PFG-formative marks as the "PFG Marks").

4.      PFG owns and maintains registrations, including incontestable registrations, for many of the PFG Marks on the principal register of the United States Patent and Trademark Office ("USPTO"), and through decades of hard work and dedication to excellence, has built significant consumer goodwill and recognition in those marks.

5.      Defendant, through its website at <pfgtruck.com> (the "Domain"), offers and provides temperature-controlled trucking and distribution services, including distribution of food, beverage, and foodservice products.  Defendant offers these services under the tradename and trademark "Performance Food Groups" (the "Infringing Tradename") and the following logo (the "Infringing PFG Design Mark," and together with the Infringing Tradename, the "Infringing Marks"):



6.      Despite the obvious suggested affiliation Defendant has created through its use of the Infringing Marks and the Domain, PFG is not affiliated with—and has never been affiliated with—Defendant or its distribution services.  Nor has PFG authorized or licensed Defendant's use

2

of the Infringing Marks or the Domain.   Instead, Defendant has blatantly adopted the Infringing Marks and the Domain with the intent to deceive the public into believing that Defendant is the same as, sponsored by, or otherwise affiliated with PFG, when it is not.

7.      Indeed, PFG's suppliers have already been confused by Defendant's use of the Infringing Marks, wrongly charging PFG's corporate account for an order placed by Defendant.

8.      Defendant is willfully infringing the PFG Marks by branding and selling its distribution services sold through the Domain under the Infringing Marks.  Defendant is further causing unfair competition and false designation of origin, as well as deceptive trade practices, by deceiving consumers into believing that Defendant and its services are somehow affiliated with PFG, when they are not.  And Defendant is intentionally capitalizing on PFG's name, marks, and goodwill to promote its business, including through its bad faith adoption and use of the Domain and the Infringing Marks.

9.      Defendant has ignored PFG's pre-litigation requests that Defendant cease its infringing conduct, leaving PFG no choice but to bring this action for trademark infringement, trademark counterfeiting, unfair competition and false designation of origin, cybersquatting, and deceptive trade practices.

## The Parties

10.     Plaintiff Performance Food Group, Inc. is a corporation organized under the laws of Colorado, with its principal place of business at 12500 West Creek Parkway, Richmond, Virginia 23238.

11.     Upon information and belief, Defendant Performance Food Group Incorporated Joliet is a corporation organized under the laws of Illinois, with its principal place of business at

23315 South Youngs Road, Channahon, Illinois 60410.  Upon information and belief, Defendant also has a business location at 2550 Middle Road, Suite 300, Battendorf, Iowa 52722.

12.     Defendant is doing business under the name Performance Food Groups.

## Jurisdiction and Venue

13.     This Court has original jurisdiction over this Complaint for infringement of a trademark, trademark counterfeiting, unfair competition, false designation of origin, and cybersquatting under the Lanham Act, pursuant to 15 U.S.C. § 1121(a), as well as 28 U.S.C. § 1331 (Federal Question Jurisdiction); 28 U.S.C. § 1337(a) (Commerce Regulations); and 28 U.S.C. § 1338(b) (Trademark and Unfair Competition).

14.     This Court has jurisdiction over all pendant state and common law claims pursuant to 28 U.S.C. § 1367(a) (Supplemental Jurisdiction) because all such claims are based upon the same or substantially the same conduct by Defendant.

15.     Defendant is subject to the general personal jurisdiction in this Court, as it is incorporated in the State of Illinois and maintains its principal place of business in Illinois. Defendant is further subject to the specific personal jurisdiction of this Court by offering to sell, selling, and delivering services in connection with the Infringing Marks within Illinois and this judicial district.  Defendant has therefore carried out its business and committed tortious acts and other wrongs within Illinois and this judicial district.

16.     The Northern District of Illinois is the proper venue for this action pursuant to 28 U.S.C. § 1391(a) and (b), because a substantial part of the events giving rise to this action occurred in this judicial district.

## PFG and Its Distribution Business

17.     PFG is a nationwide distributor of food, beverage, and food service products.

4

18.     Founded in 1885 in Richmond, Virginia, PFG started as a peddler of groceries sold by a local wholesaler.  In the ensuing decades, the company grew into a nationwide network, distributing branded products to restaurants and foodservice outlets across the United States.

19.     In 1987, PFG adopted the tradename and brand PERFORMANCE FOOD GROUP, which PFG has used continuously ever since.

20.     Today, PFG has over 35,000 associates working in more than 150 locations nationwide to deliver more than 300,000 national and branded food products to more than 300,000 customer locations.

21.     Among its 150 locations across the United States, PFG operates distribution centers in both Illinois and Iowa, and it serves tens of thousands of customers in those states in connection with the PFG Marks.

22.     From those centers, PFG distributes both third party brands and its own branded products under the PFG umbrella, including brands such as BACIO (cheese), ENTICE (hors d'oeuvres and appetizers), FARMSMART (beef, poultry, and pork), GREEN ORIGIN (plant-based proteins), PIANCONE (Italian foods), ROASTERS EXCHANGE (coffee), STONEHOUSE (beef), SWEET ENCORE (desserts), and WORLD DOCK (seafood), among many others.

23.     In addition to distributing products to its customers, PFG also provides logistics and shipping services directly to suppliers in connection with the PFG Marks.

24.     PFG performs its distribution and shipping services using trucks branded with the PFG Marks, which can be seen on road and interstates throughout the country.  In fact, PFG's truck fleet is one of the nation's largest, with approximately 7,000 vehicles all branded with the PFG Marks, logging more than 156 million miles to date.  This fleet includes refrigerated trucks, which allow PFG to safely deliver temperature-controlled products to its customers.

5

25.     To stay at the forefront of industry best practices and new technologies, PFG maintains relationships with industry associations and government agencies, actively participating in the development of new ideas to distribute the best possible products safely and efficiently to its customers.

26.     PFG's commitment to safety and quality extends to its truck fleet, which PFG consistently maintains and upgrades to ensure efficient, safe, and sustainable deliveries. This includes installing tools and systems to monitor idle time and track driver performance, as well as systems that efficiently route deliveries and improve trailer utilization. PFG also studies the aerodynamics of its tractors and trailers to help improve fuel efficiency. Recently, PFG announced investments in a fleet of electric-powered refrigerated trucks.

27.     PFG's investments in its fleet have resulted in a consistently commendable safety rating for truck fleets its size. In fact, just this year, PFG had 14 drivers inducted into the International Foodservice Distributors Association (IFDA) hall of fame—an honor reflective of the company's and its drivers' commitments toa culture of safety.

28.     PFG's reputation for and dedication to excellence in all facets of its business has also earned it numerous industry recognitions over the years. For example, *Convenience Store News* awarded PFG's convenience division, Core-Mark, with the 2023 Category Captains Award in the Foodservice/Prepared Foods category for its PERFECTLY SOUTHERN brand of fried chicken. PFG has also received multiple Hermes awards in 2023, including platinum awards for several print media, as well as awards in graphic design, such as the 2022 GDUSA American Graphic Design Award.

29.     PFG's continued investment in efficiency, quality, and customer service has grown the business from its humble roots in Richmond, Virginia, to one of the nation's largest companies. As a testament to its efforts, in 2023, PFG ranked 91st on the Fortune 500, up from 185th in 2016.

**The PFG Marks**

30.     As noted above, PFG has been using PFG, PERFORMANCE FOOD GROUP, PERFORMANCE FOODSERVICE and other PFG- and PERFORMANCE-formative marks as word and design marks (defined above collectively as the "PFG Marks") continuously since 1987 for many goods and services, and since at least 1992 in connection with the distribution of food, beverage, and foodservice products.

31.     To protect its valuable marks, PFG has obtained numerous registrations for the PFG Marks in the United States.  Those United States registrations include, in relevant part:

| Mark | Services | Reg. No. and Date | Incontestable |
|---|---|---|---|
| _PFG_ | Int'l Cl. 35: distributorships featuring grocery products | 2,009,667 (Jul. 30, 1996) | Yes |
| PERFORMANCE FOOD GROUP | Int'l Cl. 35: wholesale distributorships featuring food and beverage products and other food service industry supplies | 2,601,872 (July 30, 2002) | Yes |
| PERFORMANCE FOODSERVICE | Int'l Cl. 35: wholesale distributorships featuring food and beverage products and other food service industry supplies | 3,765,070 (Mar. 23, 2010) | Yes |
| PERFORMANCE FOODSERVICE | Int'l Cl. 35: wholesale | 3,834,879 (Aug. 17, 2010) | Yes |

7

| | | | |
|---|---|---|---|
| | distributorships featuring food and beverage products and other food service industry supplies | | |
|  | Int'l Cl. 35: wholesale distributorships featuring food and beverage products and other food service industry supplies | 3,834,858 (Aug. 17, 2010) | Yes |
|  | Int'l Cl. 35: wholesale distributorships featuring food and beverage products and other food service industry supplies | 3,834,856 (Aug. 17, 2010) | Yes |
| PFG | Int'l Cl. 35: distributorships featuring grocery products | 5,654,238 (Jan. 15, 2019) | No |

32.     Each of the above PFG Marks is in full force and effect and has been since its respective date of registration. As noted in the chart above, all but one of the registered PFG Marks has obtained incontestable status under the Lanham Act, 15 U.S.C. § 1065, and each such registration is therefore conclusive evidence of the validity of the registered Mark, of PFG's registration and ownership of that Mark, and of PFG's exclusive right to use that Mark in the United States. Similarly, the remaining PFG Mark (U.S. Reg. No. 5,654,238) is prima facie evidence of the validity of the Mark, of PFG's registration and ownership of the Mark, and of PFG's exclusive right to use the Mark in the United States. True and correct copies of the registration certificates for the PFG Marks are attached as **Exhibit A**.

33.    PFG consistently and prominently displays and advertises the PFG Marks in connection with its goods and services in the United States, including in connection with the distribution of food, beverage, and foodservice products and the shipment of supplier products through its fleet of delivery vehicles.

34.    Since at least 1992, PFG has continuously displayed the PFG Marks on the vehicles in its fleet, as shown in the below non-limiting examples:





35.    PFG also uses the PFG Marks to advertise its products and services, including its distribution services, in various media, including industry magazines, customer materials, online television, and radio advertising, and event sponsorships.

36.    PFG's further uses the PFG Marks to promote its goods and services at industry events and tradeshows. For example, since at least 2018, PFG's foodservice division, Performance Foodservice, has hosted its "FoodCentric Experience" event at multiple locations across the country. In 2022, alone, PFG hosted 66 such events, with over 30,000 individuals in attendance.

More than just a food show, these events include educational sessions, food idea exchanges, menu ideation with PFG's in-house team of chefs, labor and technology symposiums, and a marketplace of foodservice items and equipment. PFG uses its PFG Marks to advertise, promote, and feature its products and services throughout these events, as well as at the many other tradeshows it attends each year.

37. In the past year, PFG has invested over $12,000,000 to advertise and promote the goods and services sold in connection with the PFG Marks. This includes over $5,000,000 in marketing spend for PGG's distribution services.

38. Thanks to its extensive and continuous promotion and use of the PFG Marks in connection with its goods and services across the United States for decades, PFG also enjoys extensive common law rights in the PFG Marks.

39. PFG's PFG Marks are inherently distinctive. In addition, as a result of PFG's longstanding use and promotion of the PFG Marks, the Marks have acquired secondary meaning, becoming widely recognized by the general consuming public as a designation identifying PFG and its goods and services.

40. As a result of PFG's extensive advertising and promotion of its goods and services using the PFG Marks, and through favorable industry acceptance and recognition, the relevant consuming public have come to recognize and identify PFG as the source of the top-quality goods and services offered in connection with those trademarks.

41. Accordingly, the PFG Marks are assets of significant value as identifiers of PFG and its high-quality goods and services, as well as PFG's extensive goodwill.

## **Defendant's Infringing Uses of the PFG Marks**

42.     Defendant operates a website at the domain <pfgtruck.com> (the Domain), through which Defendant offers, advertises, and sells, *inter alia*, distribution services for food, beverage, and other food service products.

43.     Through the website hosted at the Domain, Defendant advertises itself as "a 100% refrigerated carrier that regularly services the East, South, and Midwest markets"—the same markets in which PFG operates distribution centers and serves thousands of customers.

44.     Defendant describes its services as "the temperature controlled transportation sector," with a "niche of servicing the transportation needs of temperature controlled products."

45.     As shown below, Defendant's website prominently features the Infringing PFG Design Mark and Infringing Tradename ("Performance Food Groups") in the website header:



46.     Defendant similarly refers to itself as "PFG" in describing the company's services, as shown in the below example:

**ABOUT US**

PFG is a 100% refrigerated carrier that regularly services the East, South and Midwest markets. For years PFG has been servicing the temperature controlled transportation sector. We have developed our niche of servicing the transportation needs of temperature controlled products. Dedicated management and drivers has helped PFG to become the reliable and trustworthy carrier it is today. The experience of our management has helped define a business plan that works well for both our customers and us. In order to serve our customer base we operate container and refrigerated trailers. Customer service is always a high priority for us, and constant communication with all of our trucks help us ensure a high level of customer satisfaction. In order for PFG to ensure a well maintained fleet we operate our own repair facility. We are able to handle the majority of all of our maintenance from tires to engine overhauls. This gives a competitive edge in being able to maintain our fleet and help minimize break downs and thus reducing late deliveries.
PFG also offer live tracking of shipment to customers without an extra charge.

47.    Defendant's "Contact" page refers to the company as "Performance Food Groups Inc." Under this name, customers and prospective customers can contact Defendant directly via phone, email, fax, and carrier mail to inquire about and purchase Defendant's distribution services.

48.    Defendant thus uses the Infringing PFG Design Mark and the Infringing Tradename in connection with the promotion, offer to sell, and sale of distribution services for "temperature controlled products," including food, beverage, and other foodservice products (collectively, "Defendant's Services"). These services are identical to and substantially indistinguishable from the services that PFG provides in connection with its senior PFG Marks.

49.    Defendant's Infringing Marks are identical to, or confusingly similar in sight, sound, and commercial impression to, the PFG Marks, as shown by the following representative examples:

| PFG Mark | Infringing Mark |
|---|---|
|  |  |
|  |  |

| PERFORMANCE FOOD GROUP | PERFORMANCE FOOD GROUPS |
|---|---|
|  |  |
| PFG | PFG |

50.     Indeed, as shown above, Defendant's Infringing PFG Design Mark mimics PFG's use of rays emanating from the left of the 'P' in its senior PFG Design Mark.

51.     Defendant's Infringing PFG Design Mark also copies the same red-and-black color scheme that PFG uses in its PFG Marks and overall branding.

52.     Defendant's Infringing Tradename is likewise virtually indistinguishable from PFG's PERFORMANCE FOOD GROUP Mark, with only one letter—the letter 's' at the end of Defendant's infringing "Performance Food Groups" trademark—difference between them.

53.     Defendant's Domain is confusingly similar to PFG's PFG word and design marks. The Domain incorporates the same dominant "PFG" element, adding only the generic descriptor "truck" and the generic top-level domain <.com>. These elements do not mitigate the risk of confusion between the Domain and PFG's PFG Mark.

54.     Adding to the likelihood of confusion, the Domain also mimics PFG's legitimate <pfgc.com> domain.

13

55. Defendant targets Defendant's Services to the same consumers as PFG, including primarily restaurants and other foodservice outlets in need of temperature-controlled products.

56. Defendant's Services also overlap with, or are natural extensions of, the same services with which PFG has continuously used the PFG Marks for over three decades. In fact, Defendant's Services are directly competitive with PFG's distribution services for temperature-controlled products.

57. Defendant's use of the Infringing Marks has already caused confusion among at least PFG's vendors. Specifically, a supplier of PFG's trucks has confused an order for trucks issued by Defendant with PFG, charging the order to PFG's corporate account when PFG has no affiliation with Defendant and has not authorized Defendant's use of the Infringing Marks.

58. The Infringing PFG Design Mark is a counterfeit of PFG's PFG Design Mark. The Infringing PFG Design Mark so closely resembles the PFG Design Mark that, when used in connection with Defendant's Services, which are identical to and substantially indistinguishable from the services with which the PFG Design Mark is registered, it is highly likely to cause confusion, mistake, or deception of the relevant trade and public. Consumers likely will believe that Defendant's Services are in some way associated or connected with PFG, or approved, sponsored, or authorized by PFG, when that is not the case.

59. The Infringing Tradename is a counterfeit of PFG's PERFORMANCE FOOD GROUP Mark. The Infringing Tradename so closely resembles the PERFORMANCE FOOD GROUP Mark—with only one letter difference—that, when used in connection with Defendant's Services, which are identical to and substantially indistinguishable from the services with which the PERFORMANCE FOOD GROUP Mark is registered, it is highly likely to cause confusion, mistake, or deception of the relevant trade and public. Consumers likely will believe that

14

Defendant's Services are in some way associated or connected with PFG, or approved, sponsored, or authorized by PFG, when that is not the case.

60.     PFG's rights in the PFG Marks predate Defendant's use of the Infringing Marks and the Domain.

61.     PFG has not authorized Defendant's use in commerce, either directly or indirectly, of its valuable PFG Marks in connection with Defendant's Services.  PFG has no affiliation or connection with Defendant.

62.     Upon information and belief, Defendant's acts were deliberately and intentionally carried out in bad faith, or with a reckless disregard for or willful blindness to PFG's rights in the PFG Marks for the purpose of trading on PFG's reputation embodied in those marks.  The Infringing Marks so resemble PFG's well-known PFG Marks, which PFG had been using for decades before Defendant's infringement began, that there is no doubt Defendant adopted the Infringing Marks with PFG and its PFG Marks squarely in mind.

63.     Given the significant similarities in not just the marks but their overall commercial impressions, there is no doubt that, when Defendant registered the Domain, it was aware of PFG's "PFG" word and design marks and PFG's legitimate website hosted at the domain <pfgc.com>. PFG's PFG Marks were well known prior to the start of Defendants' infringement.  By selecting the Domain for registration, which is so close in appearance to PFG's own domain and the "PFG" trademark, Defendant intended to divert web traffic from PFG's 300,000 plus customers and other potential customers, for Defendant's financial gain.

64.     Defendant's egregious misuse of the Infringing Marks and the Domain has caused, or is likely to cause, great and irreparable injury to PFG, including irreparable injury to the

goodwill and reputation embodied in the PFG Marks, for which PFG has no adequate remedy at law.

65.     As just one example of this ongoing harm, Defendant has already accumulated poor vehicle safety and accident ratings that are below industry standards, undermining PFG's reputation for operating a safe and reliable fleet of vehicles.

66.     Defendant has ignored this ongoing harm and PFG's requests that Defendant stop its infringing conduct.  PFG, through counsel, sent a letter to Defendant on July 5, 2023, outlining the issues raised in this Complaint.  To date, Defendant has ignored this letter and failed to respond to PFG's efforts to reach a resolution without litigation.

67.     Upon information and belief, Defendant will continue to commit the acts complained of unless enjoined.

68.     The willful nature of Defendant's unlawful acts renders this an "exceptional case," entitling PFG to an award of statutory damages, profits, treble damages, and attorneys' fees under at least 15 U.S.C. § 1117(a).

## COUNT I
## Federal Trademark Infringement under the Lanham Act (15 U.S.C. § 1114)

69.     Plaintiff PFG hereby incorporates by reference all preceding paragraphs as though expressly stated herein.

70.     Defendant is using the Infringing Marks in commerce, in connection with the sale, offering for sale, distribution, and/or advertising of goods and services that do not originate with and are not sponsored by or affiliated with PFG.

16

71.     Defendant is also applying the Infringing Marks in advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods and services that do not originate with, and are not sponsored by or affiliated with, PFG.

72.     Defendant's actions, including without limitation selling goods and services in trademark classes registered by PFG or within the natural zone of expansion of those classes and the goods and services within, are likely to cause confusion, mistake, or deception as to the source of origin of the goods and services offered by Defendant in connection with the Infringing Marks, in that customers and potential customers are likely to believe that those goods and services are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to PFG, when there is no such relationship.

73.     In fact, PFG is aware that Defendant's use of the Infringing Marks has actually caused confusion, mistake, and deception as to the source of origin of the goods and services offered by Defendant.

74.     As a direct and proximate result of the likely confusion, mistake, or deception, PFG has suffered and will continue to suffer irreparable harm if Defendant's conduct is not enjoined.

75.     The likely confusion, mistake, or deception caused by Defendant is willful and is in violation of section 32 of the Lanham Act, 15 U.S.C. § 1114.

## COUNT II
## Counterfeiting under the Lanham Act (15 U.S.C. § 1116(d), 15 U.S.C. 1114, and 15 U.S.C. 1117 )

76.     Plaintiff PFG hereby incorporates by reference all preceding paragraphs as though expressly stated herein.

77.     The Infringing PFG Design Mark and Infringing Tradename used by Defendant are spurious, and are identical or substantially indistinguishable from PFG' registered PFG Design Mark and PERFORMANCE FOOD GROUP Mark, respectively.

78.     PFG's PFG Design Mark and PERFORMANCE FOOD GROUP Mark are registered on the Principal Register, and are in use in commerce.

79.     The Infringing PFG Design Mark and Infringing Tradename are used in connection with services and types of services listed in PFG's trademark registrations for the PFG Design Mark and PERFORMANCE FOOD GROUP Mark, respectively.

80.     Defendant's use of the Infringing PFG Design Mark and Infringing Tradename is likely to cause confusion, mistake, or deception as to the source of origin of the services offered by Defendant in connection with those marks, in that customers and potential customers are likely to believe that those services are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to PFG, when there is no such relationship.

81.     In fact, PFG is aware that Defendant's use of the Infringing Marks has actually caused confusion, mistake, and deception as to the source of origin of the goods and services offered by Defendant.

82.     Defendant's use of the above-identified counterfeit marks is willful and deliberate.

83.     Aa direct and proximate result of the likely confusion, mistake, or deception, PFG has suffered and will continue to suffer irreparable harm if Defendant's conduct is not enjoined.

84.     PFG is further entitled to statutory damages of up to $2 million per counterfeit mark per type of good or service, and attorneys' fees, trebled damages, and costs.

## COUNT III
## Federal Unfair Competition & False Designation of Origin
### (15 U.S.C. § 1125(a))

85.     Plaintiff PFG hereby incorporates by reference all preceding paragraphs as though expressly stated herein.

86.     Defendant's use of the Infringing Marks constitute use of terms, names, symbols, and devices, and use of false designations of origin, all of which are likely to cause confusion, mistake, or deception as to the source of origin of the goods and services provided by Defendant, in that customers and potential customers are likely to believe that such goods and services are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to PFG, when there is no such relationship.

87.     In fact, PFG is aware that Defendant's use of the Infringing Marks has actually caused confusion, mistake, and deception as to the source of origin of the goods and services offered by Defendant.

88.     As a direct and proximate result of the likely confusion, mistake, or deception, PFG has suffered and will continue to suffer irreparable harm if Defendant's conduct is not enjoined.

89.     The likely confusion, mistake, or deception caused by Defendant is willful and is in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## COUNT IV
## Cybersquatting Under the Lanham Act (15 U.S.C. § 1125(d))
### (The Domain and PFG's "PFG" trademark)

90.     Plaintiff PFG hereby incorporates by reference all preceding paragraphs as though expressly stated herein.

91.     Defendant registered <pfgtruck.com>, which is confusingly similar to the PFG's "PFG" trademark, with a bad faith intent to profit from the goodwill, reputation, and distinctiveness of PFG's Mark.

92.     PFG's PFG trademark was distinctive at the time Defendant registered the Domain.

93.     Defendant was fully aware of PFG's rights in the distinctive PFG trademark prior to, and at the time of, its registration of the Domain.

94.     Defendant's registration of the Domain violates the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), Lanham Act § 43(d), and was and is done willfully, in bad faith, and without any legitimate business purpose.

95.     Defendant's willful and intentional violation of the Anti-cybersquatting Consumer Protection Act entitles PFG to statutory damages of up to $100,000 pursuant to the Lanham Act, 15 U.S.C. § 1117(d).

96.     As a direct and proximate result of the likely confusion, mistake, or deception PFG has suffered and will continue to suffer irreparable harm if Defendant's conduct is not enjoined.

### COUNT V
### Common Law Trademark Infringement and Unfair Competition

97.     Plaintiff PFG hereby incorporates by reference all preceding paragraphs as though expressly stated herein.

98.     This cause of action arises under the State of Illinois' common law of trademark infringement and unfair competition.

99.     Defendant's use of the Infringing Marks constitutes trademark infringement and unfair competition in violation of Illinois common law.

100.    Defendant's acts of common law trademark infringement and unfair competition have been done willfully and deliberately, and Defendant has profited and been unjustly enriched by sales that Defendant would not otherwise have made if not for its unlawful conduct.

101.    Defendant's willful and deliberate acts described above have caused injury and damages to PFG, and have caused irreparable injury to PFG's goodwill and reputation and, unless enjoined, will cause further irreparable injury, whereby PFG has no adequate remedy at law.

**COUNT VI**
**Violations of the Illinois Uniform Deceptive Trade Practices Act**
**(815 ILCS § 510/1, _et seq._)**

102.    Plaintiff PFG hereby incorporates by reference all preceding paragraphs as though expressly stated herein.

103.    Defendant has engaged in acts violating Illinois' Uniform Deceptive Trade Practices Act, including, but not limited to: passing off its counterfeit services as those of PFG; causing a likelihood of confusion and/or misunderstanding as to the source, sponsorship, or approval of its services, in that its use of the Infringing Marks misleads the public into believing that Defendant's Services are provided, sponsored or approved by, or somehow affiliated with, PFG, when they are not; and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

104.    Defendant's conduct constitutes a willful violation of the Illinois Uniform Deceptive Trade Practices Act.

105.    Defendant's willful and deliberate acts described above have caused injury and damages to PFG, and have caused irreparable injury to PFG's goodwill and reputation and to the public, and, unless enjoined, will cause further irreparable injury, whereby PFG has no adequate remedy at law.

## DEMAND FOR A JURY TRIAL

Plaintiff PFG respectfully demands a jury trial on all issues that are so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, PFG prays for judgment against Defendant as follows:

A.      Preliminarily and permanently enjoining and restraining Defendant, its directors, members, officers, agents, servants, employees, independent contractors, parents, subsidiaries, affiliates, and all persons in active concert or participation with, through, or under it, at first during the pendency of this action and thereafter perpetually:

    i.    from committing any acts of counterfeiting, trademark infringement, unfair competition, and cybersquatting, and from implying a false designation of origin or a false description or representation with respect to the PFG Marks;

    ii.    from using in any manner on trucks, packaging, labels, signs, literature, display cards, Internet websites, or other packaging, advertising, or promotional materials, or other materials or tangible property the PFG Marks or the Infringing Marks, or any other marks, words, or names that are confusingly similar thereto;

    iii.    from making any statements on promotional materials or advertising for its goods or services that are false or misleading as to source or origin or affiliation with, sponsorship by, or connection to PFG; and

    iv.    from passing off, palming off, or assisting in passing off or palming off Defendant's goods and services as those of PFG, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint

B.  Requiring that Defendant deliver to PFG any and all trucks, containers, signs, packaging materials, printing plates, and advertising or promotional materials and any materials used

in the preparation thereof, which in any way unlawfully use or make reference to the PFG Marks or the Infringing Marks.

C. Requiring that Defendant, within thirty (30) days after service of notice of entry of judgment or issuance of an injunction pursuant thereto, file with the Court and serve upon PFG's counsel a written report under oath setting forth details of the manner in which Defendant has complied with the Court's order pursuant to paragraphs A through B above.

D. Requiring Defendant to account and pay over to PFG all damages sustained by PFG as a result of Defendant's willful infringement and unfair competition, and willful deceptive trade practices, including PFG's actual damages, disgorgement of Defendant's profits, PFG's attorney's fees and costs, and ordering that the amount of damages awarded PFG be increased three times the amount thereof pursuant to 15 U.S.C. §§ 1117(a) and 1125.

E. Requiring Defendant pay statutory damages of up to $2 million per Infringing Mark per type of service sold, offered for sale or distributed pursuant to 15 U.S.C. 1117(c).

F. Ordering that PFG be awarded statutory damages of up to $100,000 pursuant to 15 U.S.C. § 1117(d) for Defendant's bad faith registration of the Domain <pfgtruck.com>.

G. Ordering Defendant and/or the registrar, registry, or host of any such domain to transfer to PFG any domain names that are confusingly similar to the PFG Marks or any other of PFG's trademarks, including but not limited to <pfgtruck.com>.

H. Ordering that PFG be awarded punitive damages based on Defendant's willful and deliberate infringement of PFG's PFG Marks, and to deter such conduct in the future.

I. Ordering that PFG recover the costs of this action, together with reasonable attorney's fees and prejudgment interest in accordance with 15 U.S.C. § 1117 and 815 ILCS § 510/3.

J. Awarding PFG post-judgment interest on all monetary awards.

23

K.   Awarding PFG such other and further relief as this Court deems just and proper.

Dated this 10th day of August 2023.

Respectfully submitted,

**MᴄGᴜɪʀᴇWᴏᴏᴅꜱ LLP**

By: /s/ *Amy Starinieri Gilbert*

Amy Starinieri Gilbert
IL Bar No.  6317954
McGuireWoods LLP
77 West Wacker Drive, Suite 4100 Chicago,
Illinois 60601
Tel:  312-849-8100
Fax:  312-849-3690
agilbert@mcguirewoods.com

Amanda L. DeFord (*pro hac vice pending*)
Claire Hagan Eller (*pro hac vice pending*)
McGuireWoods LLP
800 E. Canal Street
Richmond, Virginia 23219
Tel:  804-775-1000
Fax:  804-775-1061
adeford@mcguirewoods.com
celler@mcguirewoods.com

*Attorneys for Performance Food Group, Inc.*